IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

JOAO BOCK TRANSACTION SYSTEMS,
LLC,

               Plaintiff,

    vs.

ONLINE RESOURCES CORP.,

               Defendant.

**8:13CV245**

**CLAIM CONSTRUCTION ORDER**

This matter is before the Court on the issue of patent claim construction pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).

I.     Background

This litigation involves allegations by plaintiff Joao Bock Transaction Systems, LLC (hereinafter, "Joao Bock") that the defendant Online Resources Corp. (hereinafter, "Online") infringed numerous claims of Joao Bock's Patent No. 7,096,003 ("the '003 patent") in its online banking, mobile banking, bill pay, and presentment services.[1]  The

---

[1] Joao Bock originally asserted infringement of the following claims:

Retail Online Banking, Mobile Banking, Advanced Digital Banking and Architect Digital Banking:  Claims 222, 231, 232, 236, 239, 240, 242, 249, 250, 252;288, 297, 298, 300, 304, 311, 313, 317, 324, 331, 336, 339, 343, 345, 346;375, 377, 383, 389, 391, 395, and 397;

Commercial and Small Business Online Banking:  Claims 100, 101, 102, 104, 106,117, 129, 135, 137, 138, 148, 153, 157, 159, 169, 170, 180, 189, 222, 231, 232, 236, 240, 242, 243, 247, 249, 250, 252; 288, 297, 300, 311, 313, 317, 324, 336, 343, 345, 346; 375, 376, 377, 383, 389, 395, 397, 399, 400, and 407;

Bill Payment and Presentment:  Claims 100, 101, 102, 104, 106, 117, 129, 135, 137, 138, 148, 153, 157, 159, 169, 170, 180, 189, 222, 231, 232, 236, 240, 242, 243, 249, 250, 252; 288, 297, 300, 311, 313, 317, 324, 336, 343, 345, 346; 375, 376, 377, 383, 389, 395, 397, 399, 400, and 407.

Filing No. 64, Infringement Contentions (restricted).

'003 Patent, entitled "Transaction Security Apparatus," was issued on April 22, 2006. The patent pertains to:

> a financial transaction and/or wireless communication device authorization, notification and/or security apparatus and method, and, in particular to a financial transaction and/or wireless communication device authorization, notification and/or security apparatus and method for use in providing authorization, notification and/or security in conjunction with credit card, charge card and/or debit card use, savings and/or checking account activity and/or cellular telephone use.

Filing No. 1, Complaint, Ex. A, '003 Patent at ECF p.24.

The '003 Patent is part of the same family of patents as U.S. Patent No. 6,529,725 (the '725 Patent) and U.S. Patent No. 6,047,270 (the '270 patent). *Joao Bock Transaction Sys., LLC v. Fidelity Nat'l Info. Servs., Inc.,* No. 3:13-CV-223-J-32JRK, 2015 WL 4743669, at *12 n.2 (M.D. Fla. Aug. 10, 2015), *appeal docketed*, No. 15-1956 (Fed. Cir. Aug. 28, 2015) (hereinafter, "*FNIS*").  The '725 Patent relates to a device that provides online notification to an account holder that a transaction is occurring on his bank account.  *Joao Bock Transactions Sys, LLC, v. First Nat'l Bank*, No. 11 C 6472, 2013 WL 3199981, *1 (N.D. Ill. June 24, 2013) ("*First Nat'l Bank (Markman)")*.  The '725 Patent was issued on March 4, 2003 from an application filed on October 9, 1998, but claimed priority to the same August 8, 1996 application as the '270 and '003 Patents. *FNIS*, 2015 WL 4743669, at *12 n. 2.

The '270 Patent relates to methods and systems that provide electronic account security which is accomplished by "(a) allowing restrictions to be placed on an electronic

account; and/or (b) providing an account user notification of transactions; and/or (c) generating transaction records for an account user or account." *First Nat'l Bank*, 2013 WL 3199981, at *1. The '270 Patent and the '003 Patent contain very similar specifications and generally disclose the same invention—"the relevant distinction between the two is that the '003 Patent specifically teaches using the Internet, the World Wide Web, email, and wireless devices to facilitate the monitoring and/or authorization described in the '270 Patent." *FNIS,* 2015 WL 4743669, *at* *1.

Several terms in the related patents have been construed by other courts. *Joao v. Sleepy Hollow Bank,* 348 F. Supp. 2d 120, 124-30 (S.D. N.Y. 2004)("*Sleepy Hollow (Markman I")); Joao v. Sleepy Hollow Bank,* 418 F. Supp. 2d 578, 582-88 (S.D.N.Y. 2006)("*Sleepy Hollow (Markman II")); Joao v. Sleepy Hollow Bank,* No. 03CV10199, 2006 WL 6164178, *1-2 (S.D.N.Y. June 15, 2006)("*Sleepy Hollow (Markman II Supplement*")) (all involving '725 Patent); *First Nat. Bank*, 2013 WL 3199981, at *3-*17 ("Markman Order") (involving '270 Patent); *Joao Bock Transaction Sys., LLC v. Jack Henry & Associates, Inc.*, No. CV 12-1138-SLR, 2014 WL 2960363, at *3-10 (D. Del. June 30, 2014) ("*Jack Henry (Markman)*") (involving '003 Patent). Certain claims of each of the patents have been found invalid. *Joao Bock Transaction Sys., LLC v. Jack Henry & Associates, Inc.*, 76 F. Supp. 3d 513, 521 (D. Del. 2014), *aff'd*, 803 F.3d 667 (Fed. Cir. 2015) (per curiam) ("*Jack Henry* (invalidity order)"); *FNIS,* 2015 WL 4743669, at *6-*12 (M.D. Fla. Aug. 10, 2015 (involving the '270 and '003 Patents); *Joao Bock Transaction Sys., LLC v. Sleepy Hollow Bank*, No. 3:03-cv-10199 (WWE), slip. op (S.D.N.Y. July 21, 2010), *aff'd*, 445 Fed. App'x 359 (Fed. Cir. 2011).

Relevant facts are set forth in earlier orders and need not be repeated herein. *See* Filing No. 135, Memorandum and Order (sealed) at 2-9; Filing No. 136, Memorandum and Order at 2-3; Filing No. 176, Order at 1-4.  Earlier in this action, Joao Bock agreed not to pursue the five claims it asserts herein (102, 106, 317, 324 and 343) that were invalidated in *Jack Henry*, 76 F. Supp. 3d at 521.  In recent briefing on Online's notice of additional authority, Joao Bock indicates that it will not assert infringement with respect to the claims declared invalid in *FNIS,* 2015 WL 4743669 at *2.[2]  *See* Filing No. 201, Response at 1-2.  As a result of those concessions, the following claims remain at issue:  independent claims 100, 137, 169, 222, 288, and 375; and dependent claims 129, 153, 159, 170, 189, 231, 239, 242, 243, 249, 297, 298, 300, 304, 311, 376, 377, 383, 389, 391, 395, 397, 399, 400 and 407.[3]

The parties have submitted a Joint Claim Construction Statement in connection with 21 terms in the patent.  *See* Filing No. 100-1, Joint Claim Construction Statement.  In view of the changed posture of the case, Claim Terms No. 7, 13, and 16 through 21 are no longer at issue.  *Id.*

In support of its proposed claim constructions, Joao Bock submits copies of amendments submitted to the United States Patent and Trademark Office ("PTO") in 2004 and 2005 as part of the application for the '003 Patent.  Filing No. 103, Index of

---

[2] In *FNIS*, the United States District Court for the Middle District of Florida held claims 101, 104, 117, 135, 138, 148, 157, 180, 232, 236, 240, 244, 250, 252, 307, 313, 336, 345, and 346 of the '003 Patent are "invalid as being drawn to patent-ineligible subject matter under 35 U.S.C. § 101." *FNIS,* 2015 WL 4743669 at *2.

[3] Claims 331 and 339 are dependent claims that depend from independent claim 317, which Joao Bock disclaimed in response to the *Jack Henry* decision.  Joao Bock has not argued that the limitations in the dependent claims materially limit claim 317 such that they could survive independently.  Accordingly, the court finds Joao Bock's statement disclaiming assertion of independent claim 317 also covers the dependent claims.

Evid., Declaration of Maureen Abbey, Exs. A-D. Online submits extrinsic evidence in support of its proposed construction of the term "network computer." Filing No. 111-1, Index of Evid., Affidavit of Gregory C. Scaglione, Ex. A, copies of internet publications from the 1995-96 time period.

II.     Principles of Claim Construction

Claim construction falls "exclusively within the province of the court," not that of the jury. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837 (2015) (quoting *Markman*, 517 U.S. at 370). It is proper for courts to "treat the ultimate question of the proper construction of the patent as a question of law in the way that [courts] treat document construction as a question of law." *Id.* at 837, 841 (noting that when the court relies solely upon the intrinsic evidence—the patent claims, the specification, and the prosecution history—the court's construction is a determination of law, however, underlying factual determinations are reviewed for clear error).

The claims of a patent define the scope of the patent. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). The claims of a patent are of primary importance in determining what is patentable and the function and purpose of a claim is to "delimit the right to exclude." *Id.* The purpose of claim construction is to "determin[e] the meaning and scope of the patent claims asserted to be infringed." *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). A claim construction order will dictate how the court will instruct the jury regarding a claim's scope. *O2 Micro Int'l Ltd. v. Beyond Innovation Technology Co., Ltd.*, 521 F.3d 1351, 1359 (Fed. Cir. 2008).

The process of construing a claim term begins with the words of the claims. *Phillips,* 415 F.3d at 1312–14; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Absent contravening evidence from the specification or prosecution history, plain and unambiguous claim language controls the construction analysis. *DSW, Inc. v. Shoe Pavilion, Inc.*, 537 F.3d 1342, 1347 (Fed. Cir. 2008). However, the claims "must be read in view of the specification, of which they are a part." *Phillips,* 415 F.3d at 1315 (quoting *Markman,* 52 F.3d at 979); *see Tempo Lighting, Inc. v. Tivoli, LLC,* 742 F.3d 973, 977 (Fed. Cir. 2014) (stating in claim construction, the court "gives primacy to the language of the claims, followed by the specification"). Additionally, the prosecution history, while not literally within the patent document, serves as intrinsic evidence for purposes of claim construction. *Id.*

If a claim term remains ambiguous after an examination of intrinsic evidence, the court may resort to extrinsic evidence. *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001). Extrinsic evidence includes expert and inventor testimony, dictionaries, and learned treatises. *Phillips,* 415 F.3d at 1317. Extrinsic evidence is less reliable and less persuasive than intrinsic evidence since such evidence is not part of the patent and was not created concurrently with the prosecution of the patent. *Id.* at 1317-19; *Summit 6, LLC v. Samsung Electronics Co.*, 802 F.3d 1283, 1290 (Fed. Cir. 2015) ("Although courts are permitted to consider extrinsic evidence, like expert testimony, dictionaries, and treatises, such evidence is generally of less significance than the intrinsic record."). "Extrinsic evidence may not be used 'to contradict claim meaning that is unambiguous in light of the intrinsic evidence.'" *Summit 6, LLC,* 802 F.3d at 1290 (quoting *Phillips,* 415 F.3d at 1324).

"[A] district court is not obligated to construe terms with ordinary meanings, lest trial courts be inundated with requests to parse the meaning of every word in the asserted claims." *O2 Micro Int'l Ltd.,* 521 F.3d at 13*60*. However, when the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute. *Id.*

The words of a claim are generally given their ordinary and customary meaning, which is the meaning a term would have to a person of ordinary skill in the art in question at the time of the invention. *Phillips,* 415 F.3d at 1313. The inquiry into how a person of ordinary skill in the art understands a term provides an objective baseline for which to begin claim interpretation. *Id.* "In some cases, the ordinary meaning of claim language . . . may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

"'There are only two exceptions to the general rule [that claim terms are given their plain and ordinary meanings to one of skill in the art]: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution.'" *Golden Bridge Tech., Inc. v. Apple Inc.,* 758 F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Computer Entm't Am. LLC,* 669 F.3d 1362, 1365 (Fed. Cir. 2012)). "To act as its own lexicographer, a patentee must 'clearly set forth a definition of the disputed claim term' other than its plain and ordinary meaning." *Thorner,* 669 F.3d at 1365-66 (quoting *CCS Fitness, Inc. v. Brunswick Corp.,* 288 F.3d 1359, 1366 (Fed. Cir. 2002)). "It is not enough for a patentee to simply disclose a single embodiment or use a word in the

same manner in all embodiments, the patentee must 'clearly express an intent' to redefine the term. *Id.* at 1366 (quoting *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1381 (Fed. Cir. 2008)).  The inventor's written description of the invention is relevant and controlling insofar as it provides clear lexicography. *Id.*

The court is guided in the claim construction endeavor by several "canons of claim construction" or guideposts. *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1376 (Fed. Cir. 2001). Under the doctrine of claim differentiation, a dependent claim has a narrower scope than the claim from which it depends and an independent claim has a broader scope than the claim that depends from it. *Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*, 423 F.3d 1343, 1351 (Fed. Cir. 2005).  Also, ordinarily, claims are not limited to the preferred embodiments disclosed in the specification. *Phillips,* 415 F.3d at 1323.  Different words in a patent have different meanings and the same words have the same meaning. *Innova/Pure Water, Inc., v. Safari Water Filtration Systems, Inc.,* 381 F.3d 1111, 1119-20 (Fed. Cir. 2004).  Use of the open-ended term of art, "comprising," allows the addition of other elements so long as the named elements, which are essential, are included. *See Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997).  Generally, a preamble is not limiting. *Summit 6, LLC,* 802 F.3d at 1292 (noting, for example that preamble language that merely states the purpose or intended use of an invention is generally not treated as limiting the scope of the claim).  "When the applicant adds a claim or otherwise amends his specification after the original filing date, . . . the new claims or other added material must find support in the original specification." *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. General Elec. Co.*, 264 F.3d 1111, 1118 (Fed. Cir. 2001)

(noting that "the written description requirement and its corollary, the new matter prohibition of 35 U.S.C. § 132, both serve to ensure that the patent applicant was in full possession of the claimed subject matter on the application filing date).

When looking at a specification in the patent, the court adheres to two axioms. *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 904 (Fed. Cir. 2004). On the one hand, claims must be read in view of the specification, and, on the other hand, a court may not read a limitation from the specification into the claims. *Id.*; *Innovad Inc. v. Microsoft Corp.,* 260 F.3d 1326, 1332 (Fed. Cir. 2001) (noting that the "interpretative process forbids importing limitations from the specification into the defining language of the claims."). If possible, claims should be construed so as to preserve the claim's validity, but that maxim is limited "to cases in which 'the court concludes, after applying all the available tools of claim construction, that the claim is still ambiguous.'" *Phillips,* 415 F.3d at 1327 (quoting *Liebel-Flarsheim Co.,* 358 F.3d at 911).

III.    Construction of Disputed Claims

A threshold issue is whether the court can or should consider materials submitted during the claim amendment process in 2004 and 2005 that purport to define certain terms. *See* Filing No. 103, Index of Evid., Exs. A-D. Online argues that those materials cannot be considered since Joao Bock clams a priority date of 1996 and the issue is what the claims would mean to a person of ordinary skill in the art at the time of filing. Joao Bock contends that it has shown that the materials submitted as amendments were supported in the original specification and argues that the PTO implicitly found accordingly when it allowed the patent to issue on August 22, 2006.

The District Court for the District of Delaware rejected Joao Bock's similar reliance on the definitions it submitted to the PTO in 2004 and 2005, but not because the definitions constituted "new matter," the court expressly did not address that issue. *Jack Henry (Markman)*, 2014 WL 2960363, at *2. The court's refusal to embrace the definitions was based on the court's finding that the definitions were not clearly stated. *Id.* The court noted that "[t]he definitions were not included in the specification, were not the subject of any commentary by the examiner, were made years after the earliest priority date, and were added for litigation purposes, that is, to differentiate the '003 patent from a related patent." *Id.* (referring to the invalidation of certain claims of the '725 patent in *Sleepy Hollow Bank*, 445 Fed. App'x 359 (Fed. Cir. 2011)).

This court finds it unnecessary to resolve the "new matter" issue in connection with claim construction because the court has considered only the language of the claims and the specification in making its determination. It is unnecessary to rely on the prosecution history or extrinsic evidence.

The court has carefully reviewed the patent at issue. The court's claim construction is generally guided by the language of the claims, in the context of the other claims of the patent and the specifications. The patent claims and specification provided a sufficient foundation for the court's claim construction. The court finds the extrinsic evidence submitted by Online would add little to the analysis. The court finds as follows. [4]

---

[4] Claim terms are referred to by number as set forth in the parties' Joint Claim Construction Statement, Filing No. 100.

<u>**Claim Term 1: "Communication Device"**</u>[5]

Joao Bock proposes the term be construed as meaning "a device which transmits a signal, data, information, or a message, or a device which receives a signal, data, information, or a message, or a device which can transmit a signal, data, information, or a message and which can receive a signal, data, information, or a message."   Online proposes "A device for transmitting and receiving signals."  *Id.*  The parties' dispute focuses on whether a "communication device" must include both a transmitter and a receiver or whether a communication device can include either a receiver or a transmitter.  Online argues it must include both while Joao Bock contends that it can include either or both.  At the Markman hearing, Joao indicated that it had no objection to insertion of the word "and/or" and additional examples into Online's proposed construction.

The court finds the language of the claims and the specifications support the construction of "communication device" to mean "a device that transmits and/or receives signals, data, information and messages."  The language of the claims and specifications indicated that a communication device in the '003 Patent may include a transmitter, a receiver, or both.  Filing No. 1, Complaint, Ex. A, '003 Patent at cols. 4:49-60; 6:22-47; 47:28-29; Figs. 2 and 5;  *see also First Nat'l Bank*, 2013 WL 3199981, at *15 (adopting similar construction with respect to '270 Patent).

---

[5] "Communication device" appears in claims 100, 129, 137, 153, 159, 169, 222, 231, 239, 242, 243, 249, 288, 297, 298, 300, 304, 31, 331, 339, 375, 376, 377, 383, 389, 391, 395, 397, 399, 400, and 407.

## Claim Term 2: "Electronic Mail Message"[6]

Joao Bock proposes that "Electronic mail message" be construed to mean "a message sent and received electronically, or a message sent by one device or computer and received by another device or computer." Online proposes "A communication sent to an email address."

In the context of the specifications, the court finds that Joao Bock's proposed construction is appropriate. *See* [Filing No. 1], Complaint, Ex. A, '003 Patent at col. 10:45-53. The specification indicates several different types of messages, including faxes, voice mail messages, answering service messages, and electronic mail messages—using different types of technology—can be used to send information from the apparatus to the account holder. [Filing No. 1], Complaint, Ex. A, '003 Patent at cols. 10:45-67; 38-66-39:13, 39:42-62. The term "electronic mail message" refers generically to an overall method of communication, not to one specific type of communication. *Id.*, col 10:45-52 ("The signal utilized could be in the form of a communication transmission, depending upon the communication medium utilized, a telephone call, a voice message, a beeper and/or a pager message, an electronic mail message, a fax transmission, and/or any other mode of communication which may be utilized with any of the apparatuses, devices and/or components described herein."). As used in the specification, the term includes emails sent to an email address, but is not limited to only that form of communication. Finding that "electronic mail message" means only communications sent to an e-mail address would limit the claim. The specifications

---

[6] "Electronic mail message" appears in claims 243, 300, 377, 389, and 407.

show the term was meant to include such things as communications to and from a point-of-sale device.  *See, e.g., id.*, col.4:8-15

### Claim Term 3: "Signal"[7]

Joao Bock proposes that the word "signal" means "an indication, or an indication having or conveying data, information, or a message, or a conveyor of data, information, or a message, or an electrical, electronic, electromagnetic, optical, digital, visual, audible, or other, indication having or conveying data, information, or a message, or an indication representing data or information."  Online contends that the term should be given its plain meaning to one of ordinary skill in the art, but argues, in the event a construction is necessary, that a proper construction would be "an electromagnetic transmission containing data or information."

The court finds the term should be construed as "a transmission containing data or information."  There is no indication in the claims or specifications that "signal" was meant to be limited to electromagnetic transmissions. The language in the patent specifications refers variously to signals generated and received by devices or components communicating via "telecommunication systems, satellite communications systems, radio communications systems, digital communications systems, digital satellite communications systems, personal communications services communications systems" and "any other appropriate communications system."  *Id.*, col. 14:10-16.  This construction is consistent with the claim language which recites, for example, "the processing device generates a first signal containing information for allowing or

_____

[7] "Signal" appears in claims 100, 129, 137, 153, 159, 169, 170, 189, 222, 231, 239, 242, 243, 249, 288, 297, 298, 300, 304, 311, 331, 339, 375, 376, 377, 383, 389, 391, 395, 397, 400, and 407.

disallowing the transaction" *Id.*, col. 54:63-65.  Further, this construction comports with the ordinary dictionary definitions as they relate to electronics and electronic devices. *See, e.g.*, *Signal*, American Heritage Dictionary of the English Language (5th ed. 2011), http://www.thefreedictionary.com/signal (last visited Dec. 2, 2015) ("an electrical quantity or effect, as current, voltage, or electromagnetic waves, that can be varied in such a way as to convey information," "Electronics—An impulse or fluctuating quantity, as of electrical voltage or light intensity, whose variations represent coded information," "Computers—A sequence of digital values whose variations represent coded information," "Telecommunications—the sound, image, or message transmitted or received by means of telecommunications").

### Claim Term 4:  "Authorization Request"[8]

Joao Bock proposes that "authorization request" be construed to mean "something, an action, operation, process, or function, taken or performed to determine or to ascertain whether or not a transaction or an activity is allowed or approved, or an asking for an approval or allowance of, for, or regarding, a transaction or an activity, or data or information used in determining or ascertaining whether or not a transaction or an activity is allowed or approved, or an asking for whether or not a transaction or an activity is allowed or approved." Online proposes "[a] query sent to the central processing computer in real-time via a communications device, seeking approval or disapproval of a transaction or activity in process."

The court finds "authorization request" should be construed to mean "a query to determine or to ascertain whether or not a transaction or an activity is allowed or

---

[8] "Authorization request" appears in claims 100 and 189.

approved."  Support for that construction can be found in the claims and in the patent specification.  Filing No. 1, Complaint, Ex. A, '003 Patent, cols. 42:5-10; 54:58-65.  It is also supported in the specification which refers to authorization of banking transactions and point-of-sale authorization. *Id.*, cols. 8:47-54; 13:21-27; *see also Sleepy Hollow (Markman II),* 418 F. Supp. 2d at 582 (defining of authorization request as: "a query sent to the central processing computer via a communications medium, seeking approval or disapproval of a transaction or activity.").

## Claim Term 5:  "Security"[9]

Joao Bock proposes the construction "providing safety or protection from risk." Online argues that because this phrase is found in the preamble it is not limiting and does not require construction.  It argues, the term "security" should be construed as part of the entire term "Transaction Security Apparatus," and that phrase should be construed as "an apparatus providing real-time authorization, notification and/or security in financial transactions."

The court finds no construction is necessary.  The term should be given its ordinary meaning which is "freedom from risk or danger; safety." Security, American Heritage Dictionary of the English Language (5th ed. 2011), http://www.thefree dictionary.com/security (last visited Dec. 2, 2015).

## Claim Term 6:  "At Least One of A and B"[10]

---

[9] "Security" appears in claims 100 and 222.

[10] "At least one of  . . . and . . ." appears in claims 100, 169, 222, 231, 242, 249, 298, 300, 304, 389, 391, and 397.

Joao Bock argues that "at least one of A and B" should be construed as "one or more of the items in the list" or "either or both of the items in the list." Online proposes "one or more of one or more of the items contained in the list."

At the hearing, counsel for Joao Bock stated that Online's proposed construction in the Joint Claim Construction Statement apparently contained an error in that "one or more of one or more of the items in the list" (emphasis added) should have been "one or more of the items in the list," as construed in *Jack Henry*. *See* Filing No. 196, Transcript of Markman Hearing (unredacted) ("Hr'g Tr.") at 54. Counsel for Online conceded that although the language it proposed was taken verbatim from *Sleepy Hollow*, the language adopted in *Jack Henry* also worked. *Id.* at 55; *see Sleepy Hollow (Markman I)*, 348 F. Supp. 2d at 124 ("One or more of one or more of the items contained in the list."); *Jack Henry (Markman)*, 2014 WL 2960363, at *3 ("One or more of the items in the list").

In light of Online's concession, the court finds the language adopted in *Jack Henry* is a proper construction. The construction of "at least one of A and B" as "one or more of the items in the list" is supported by the specification in which the invention is described using either disjunctive, or both conjunctive and disjunctive language. *See, e.g.*, Filing No. 1, Complaint, Ex. A, '003 Patent, cols. 4:21-22; 10:3-14, 7:58-67. The court agrees with Online that this construction makes more sense when there are more than two items in a given list and is consistent with the claim language that describes lists having two or more components. *See, e.g.*, *id.*, cols. 47:30–32, 66–48; 56:65–57:10; 83:21–84:5. This is further supported by the specification in which the patentees used either disjunctive, or both conjunctive and disjunctive language to describe the

present invention. *See, e.g., id.*, cols. 4:21–22; 10:3–14 (referring to the Internet and/or the World Wide Web); 7:58–67 (referring to each authorized vendor, seller, and/or services provider, as well as the amount of the transaction, the parties involved, the geographical area limitation and/or the times of allowed usage); 20:63–21:10 (referring to a checking account, savings account, and/or ATM account); *see also Jack Henry (Markman),* 2014 WL 2960363, at *3.

### Claim Term 8: "Network Computer"[11]

Joao Bock proposes that "Network computer" means "a device or computer which can receive a signal, data, information, or a message, from another device or computer in or via a communication network, or a device or computer which can transmit a signal, data, information, or a message, to another device or computer in or via a communication network." Online proposes "'Network computer' is a term of art used throughout the computer industry in the mid-to-late 1990's that referred to a computing device capable of running its operating system but reliant upon an outside network for software, data storage, and data processing."

The court finds the term should be construed as "a computing device capable of running its operating system but reliant upon an outside network for software, data storage, and data processing." At the hearing, Joao Bock expressed agreement with Online's proposed language absent the introductory phrase. Filing No. 196, Hr'g Tr. at 59. Accordingly, the court finds "network computer" means "a computing device capable of running its operating system but reliant upon an outside network for software, data storage, and data processing." This language distinguishes a "network

---

[11] "Network computer" appears in claims 243, 300, and 389.

17

computer" from a personal computer and is supported in the specifications.  Filing No. 1, Complaint, Ex. A, '003 Patent, cols.6:4–21, 14:58–15:18.

**Claim Term 9:  "Processes"[12]**

The parties agree to the construction of "processes" to mean "operations on data or information, or the performance of a series of actions or operations directed toward a particular result."  *See* Filing No. 196, Hr'g Tr. at 61; *Jack Henry (Markman),* 2014 WL 2960363, at *3; *Sleepy Hollow (Markman I),* 348 F.Supp.2d at 128.

**Claim Term 10:  "Processing Device"[13]**

The parties agree to Online's proposed construction with the addition of factual findings made in *Jack Henry*.  Filing No. 196, Hr'g Tr. at 61; *Jack Henry (Markman),* 2014 WL 2960363, at *7.  Accordingly, the court finds "processing device" is construed to mean "that part of the central processing computer which processes information about transactions and accounts."  Further, the court finds as follows:  a processing device here is distinct from a communication device and a transaction device, such as the point-of-sale terminal.  The processing device is not merely the central processing unit (CPU) since it is more than just where arithmetic and logical operations are performed and program instructions are executed.  Figures 2, 5, and 8 show that the central processing computer is composed of various component devices including a CPU.  *See Jack Henry (Markman),* 2014 WL 2960363, at *7.

---

[12] "Processes" appears in claim 231.

[13] "Processing device" appears in claims 100, 137, 169, 222, 288, and 375.

<u>**Claim Term 11: "Transaction"**</u>[14]

Joao Bock proposes "transaction" means "an act, an activity, an action, or a process, or an act, an activity, an action, or a process, which is being carried out or performed or which has been carried out or performed." Online proposes the term means "an activity affecting an account, such as a withdrawal."

The court finds the word is a widely-known term that can be given its ordinary meaning. The court agrees with the finding that "transaction" means "activity" in the context of the '003 patent. *Jack Henry (Markman)*, 2014 WL 2960363 at *7. The court finds no support in the language of the claims or the specification for Online's proposed limitation to an activity affecting an account, such as a withdrawal.

<u>**Claim Term 12 — "Banking Transaction"**</u>[15]

Joao Bock proposes that "banking transaction" means "a transaction affecting or involving a deposit account, or a transaction affecting or involving a bank account or a financial account." Online submits the proper construction is "an activity affecting the amount of funds in a bank account, such as a withdrawal."

The court finds that Joao Bock's proposed construction is appropriate. The construction "a transaction affecting or involving a deposit account, or a transaction affecting or involving a bank account or a financial account" is supported in the specification which shows that activities that do not affect the amount of funds in an account are contemplated in the invention. *See* Filing No. 1, Complaint, Ex. A, '003

---

[14] "Transaction" appears in claims 100, 242, 243, 304, 383, 389, and 391.

[15] "Banking transaction" appears in claims 222 and 288.

Patent, col. 42:36-55 (noting limitations as to geographical location, persons authorized, and days and times of allowed usage).

### Claim Term 14:  "Internet Transaction"[16]

Joao Bock proposes the term be given its plain and ordinary meaning in view of the construction of "transaction."   Online proposes the construction "a purchase of goods or services from a provider over the Internet."

The court agrees with the construction adopted in *Jack Henry*, "an activity conducted over the Internet."  *Jack Henry (Markman)*, 2014 WL 2960363, at *9. That construction is supported by the specification which describes an "Internet transaction" as a transaction, which this court has defined as "an activity," that is conducted over the Internet.  *See, e.g.,* Filing No. 1, Complaint, Ex. A, '003 Patent, col. 10:3-14.  There is no support in the specification for a limitation to purchases of goods or services. Online's reliance on language in the specification that refers to "purchasing or sale activity over an on-line service, the Internet, and/or the World Wide Web . . . ." as support for its construction is misplaced.  That language is preceded by the phrase "the present invention may be utilized in any similar type of transactional activity," indicating that purchase and/or sale activities are merely examples of activities and the invention is not limited to those activities alone.  *See id.*, col. 40:7-13.

### Claim Term 15:  "In Real Time"[17]

Joao Bock proposes that the phrase "in real time" be construed to mean ""immediately, or instantaneously, or at once, or the actual time during which something

---

[16] "Internet transaction" appears in claim 137.

[17] "In real-time" appears in claims 100 and 222.

takes place, or in the actual time during which something takes place."  Online proposes "immediately."

The court agrees with the construction of "in real time" to mean "immediately." *See Jack Henry (Markman),* 2014 WL 2960363, at *7.  This construction is consistent with the claim language describing "wherein the second signal is transmitted to the communication device or to the second communication device in real-time."  Filing No. 1, Complaint, Ex. A, '003 Patent, col. 55:3-6.  Similarly, the use of the term "real time" in the specification supports the above construction.  The term is used in the context of authorization requests and signal transmissions.  *Id.,* cols. 54:57-60; 55:1-5.  The specification describes the invention as providing for "<u>an immediate</u>, as well as for a deferred, authorization, notification and/or security in any of the above-described financial transactions and/or wireless communication transactions."  *Id.,* col. 11:6-8 (emphasis added); *see also id.,* col. 39:20-28 ("an immediate, as well as for a deferred, and/or the deferred control, activation, de-activation, programming, monitoring and/or security, etc., of any one or more the herein described credit cards").  Accordingly,

IT IS ORDRED:

1.      The claim terms of the '003 Patent are construed as set forth above.

2.      Within ten days of the date of this order, counsel for Joao Bock shall initiate a telephone planning conference with all parties and United States Magistrate Judge Thomas Thalken in order to schedule this matter to trial.  *See* Filing No. 101.

DATED this 23rd day of December, 2015.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge